IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY JO HOLLINGSWORTH, as Administratrix of the Estate of BRANDY KEITH OWENS, and for the benefit of his next of kin, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:04-CV-935-WKW |
| JERRY EDGAR, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on three motions: Motion to Dismiss Amended Complaint (Doc. # 26) filed by Defendants Jerry Edgar, Anthony Clark, Walter Inabinett, Greg Jackson, Kevin Smith, Jason Ballard, Wayne Spoon, Elliott King, Doreen Nelson, Dewey Bass, Linda Benson, Eugene Hoarth, Tom Speigner, and Scott Watkins; Motion to Dismiss Amended Complaint (Doc. # 35) filed by Defendants Catherine Martin, Herbert Barber, Jeffrey Barnes, Bo Davis, David McVay, and Jay Spicer; and Motion to Dismiss Amended Complaint (Doc. # 45) filed by Defendant Jeff Barber.[1] For the reasons given below, the motions to dismiss are due to be granted in part and denied in part.

### I. FACTS AND PROCEDURAL HISTORY

This case arises out of the April 16, 2003 suicide of Brandy Keith Owens while he was detained in the Covington County Jail (the "Jail"). Plaintiff Betty Jo Hollingsworth brings this action as the administratrix of the estate of Mr. Owens. The defendants are sued in their individual

---

[1] The latter two motions adopt the briefing of the first-filed motion to dismiss.

capacities. Defendant Anthony Clark is alleged to be the Sheriff of Covington County and responsible for the maintenance and operation of the Jail. (Am. Compl. ¶ 6.) Jerry Edgar is alleged to be the Jail Administrator and to have general supervision and control of the Jail.[2] (*Id.* ¶ 7.) Mr. Edgar is also alleged to have been one of the booking officers on April 15, 2003, the night that Mr. Owens was brought into the Jail. (*Id.* ¶¶ 55-56.) Walter Inabinett, Elliott King, and Wayne Spoon are alleged to be investigators at the Covington County's Sheriff's Department. (*Id.* ¶¶ 8-9, 11.) Doreen Nelson, a Jail supervisor, was on duty on April 15 and 16, 2003. (*Id.* ¶¶ 10, 58.) Fifteen other "jailers" are alleged to have been duty on April 15 and 16, 2003, including Greg Jackson, Jason Ballard, Herbert Barber, Jeff Barber, Jeffrey Barnes, Dewey Bass, Linda Benson, Bo Davis, Eugene Hoarth, Catherine Martin, David McVay, Kevin Smith, Tom Speigner, Jay Spicer, and Scott Watkins. (*Id.* ¶¶ 12-26, 58.) Plaintiff seeks compensatory and punitive damages, costs, and fees.

Mr. Owens was detained in the Jail for failure to pay child support. (Am. Compl. ¶ 33.) On April 7, 2003, he had problems with other inmates, who believed that Mr. Owens was a "snitch."[3] (*Id.* ¶¶ 32, 35-41.) On April 8, 2003, Mr. Owens was permitted to go out on unpaid work release. (*Id.* ¶ 43.) He was again permitted to go out on unpaid work release on April 10, 2003; on this release, Mr. Owens did not return to the Jail, thus becoming an escapee. (*Id.* ¶¶ 45-46.)

---

[2] Defendants' briefing indicates that Jerry Edgar is "incorrectly" alleged to be the Jail Administrator. (Defs.' Br. 20.) The Court, however, must take all allegations as true and will proceed as if Jerry Edgar were the Jail Administrator on all relevant dates.

[3] During a previous incarceration at the Jail, Mr. Owens was harassed by other inmates who believed he was a snitch; as a result, at least one jailer, who is not a defendant in this suit, believed that Mr. Owens was suicidal and an escape risk. (Am. Compl. ¶¶ 27-32.)

A BOLO was placed into NCIC that described Mr. Owens as suicidal.[4] (Am. Compl. ¶ 47.) During the search for Mr. Owens, investigators from the Sheriff's Department had contact with Mr. Owens' girlfriend and with Mr. Owens' mother, both of whom told investigators of Mr. Owens' recent suicide letter and previous suicide attempts. (*Id.* ¶¶ 48-53.) Mr. Owens was captured and brought back to the Jail on the night of April 15, 2003. (*Id.* ¶ 55.) He was not screened for the need for mental health attention. (*Id.* ¶¶ 55-56, 60-62.) The defendants did not refer him to a mental health agency or make contact with a mental health professional. (*Id.* ¶¶ 62-64.) Mr. Owens was not placed in a holding cell within the view of the control center or booking officers. (*Id.*) He was not placed in a cell with other inmates. (*Id.* ¶¶ 62-67.) He was not visually observed on a regular basis by the jailers. (*Id.* ¶¶ 62-67.) The defendants did not remove from Mr. Owens' cell items, such as clothing and bedding, that could be dangerous to suicidal inmates. (*Id.* ¶¶ 66, 69.) It is alleged that Mr. Owens was upset, depressed, and crying through the night regarding how much time he was going to be incarcerated for the escape. (*Id.* ¶ 59.) At some point a jailer, who is not a defendant in this matter, recommended to his supervisor, Defendant Doreen Nelson, that Mr. Owens should be placed on suicide watch and moved to a cell where he could be properly observed, but Ms. Nelson refused. (*Id.* ¶¶ 71-72.)

On April 16, 2003, at 8:30 a.m., investigator Wayne Spoon, who allegedly knew that Mr. Owens was suicidal, served Mr. Owens with a warrant for felony escape. (*Id.* ¶ 73.) At 10:45 a.m., Mr. Owens' body was discovered hanging by a sheet from a broken light fixture in his cell.

---

[4] Although not defined in the Amended Complaint, the Court believes that a BOLO is a "Be On the Look Out" police radio bulletin and that NCIC ("National Crime Information Center") is a computerized index of criminal justice information shared by federal, state, and local law enforcement.

(Am. Compl. ¶ 74.) Two days earlier, another inmate attempted to hang himself in the same manner in the same cell. (*Id.* ¶¶ 75-78.)

In the Amended Complaint, the plaintiff alleges two claims against all defendants: a § 1983 claim for the violation of Mr. Owens' constitutional rights and a claim for wrongful death under state law. Mr. Owens' death was allegedly caused by the defendants' deliberate indifference to Mr. Owens' serious medical needs and suicidal tendencies in violation of the Eighth and Fourteenth Amendments. The Amended Complaint alleges that, though all of the defendants had knowledge that Mr. Owens was suicidal in the days leading up to and including the day of his suicide, they failed to take any precautions to prevent the suicide.

The Court must take as true all allegations in the Amended Complaint. Factual allegations will be referenced where appropriate in the discussion.

## II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). The Court must accept all factual allegations as true and view them in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The threshold is "exceedingly low"

4

for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

## IV. DISCUSSION

In their three motions to dismiss, the defendants offer the same grounds for dismissal: (1) the complaint fails to state a claim upon which relief can be granted; (2) the defendants have state constitutional immunity from the wrongful death claim; (3) the defendants have qualified immunity from the § 1983 claim; (4) the complaint fails to meet the heightened pleading requirement applicable to cases in which the defense of qualified immunity may be available; (5) the allegations added to the amended complaint constitute impermissible shotgun pleading; and (6) because the decedent was a pretrial detainee, the plaintiff cannot maintain an Eighth Amendment claim.

### A.  *Fourteenth Amendment*

The defendants contend that the plaintiff cannot maintain an Eighth Amendment claim because the decedent was a pretrial detainee. The Court agrees. Because Mr. Owens was a pretrial detainee at the time of his death, he is guaranteed rights not under the Eighth Amendment but rather under the Due Process Clause of the Fourteenth Amendment. *See Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). Nevertheless, the analyses are the same, and the Court will utilize an Eighth Amendment analysis in addressing the plaintiff's § 1983 claims below. The motions to dismiss for failure to state a claim under the Eighth Amendment are due to be granted; however, the plaintiff's § 1983 claims for a violation of the Fourteenth Amendment remain.

### B.  *Qualified Immunity*

The defendants argue that the plaintiff fails to state a claim upon which relief can be granted and, if claims are stated, then they are entitled to qualified immunity. "Qualified immunity offers

5

complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While qualified immunity is typically addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

"To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). Apparently, the parties here do not dispute that the defendants were acting within the scope of their discretionary authority.

Once it is established that the defendants were acting within their discretionary authority, the burden shifts to the plaintiff to prove that qualified immunity is not warranted. *Vinyard*, 311 F.3d at 1346. The Supreme Court has articulated a two-part test in the qualified immunity analysis. First, the court must determine whether the plaintiff's allegations establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the court must evaluate the complaint to determine if, assuming the allegations are true, it pleads a cognizable violation of the constitution). If this is answered in the affirmative, the court's next step is to determine whether the right in question was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.*

at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (stating that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")). In essence, a defendant is entitled to "fair warning" that his alleged conduct would be unconstitutional. *Hope*, 536 U.S. at 741.

The Court's first step, then, is to determine whether the factual allegations in the complaint, if true, establish a constitutional violation by the defendants. As explained above, although the decedent was a pretrial detainee whose rights are guaranteed under the Fourteenth Amendment, "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendment." *Marsh*, 268 F.3d at 1024 n.5.

The Eighth Amendment's prohibition on cruel and unusual punishment establishes "the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The right to receive medical care encompasses a right to psychiatric and mental health care, *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986), and a right to be protected from self-inflicted injuries. *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989). The failure to prevent jail suicide is "analogous to the failure to provide medical care." *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990).

To prevail on a § 1983 claim in the case of a pretrial detainee suicide, the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life. *See Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003). "The deliberate indifference standard 'requires a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" *Id.* (quoting *Popham,* 908 F.2d at 1563). A prison official will be liable for a constitutional violation when there is an objectively substantial risk of serious harm to a prisoner and the official,

who is subjectively aware of the substantial risk, reacts to the risk in an objectively unreasonable manner. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001). Deliberate indifference must be considered in light of "the level of knowledge possessed by the officials involved." *Popham*, 908 F.2d at 1564; *see also Farmer v. Brennan*, 511 U.S. 825, 841 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). "A plaintiff must also show that the constitutional violation caused his injuries." *Marsh*, 268 F.3d at 1029.

Under the facts of this case, each defendant belongs to one of four types -- Sheriff, Jail Administrator, investigators, and jailers -- distinguished by the nature of involvement in Mr. Owens' incarceration. Each type of defendant requires a separate analysis.

   1.   **Sheriff Anthony Clark**

The plaintiff's claim against the Sheriff for deliberate indifference to Mr. Owens' risk of harm to himself fails to state a claim upon which relief can be granted. Supervisory officials are not liable for a § 1983 claim on the basis of respondeat superior or vicarious liability. *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003). Although it is alleged that all of the defendants knew that Mr. Owens' was suicidal, the plaintiff does not allege that the Sheriff personally participated in the booking, placement, and supervision of Mr. Owens. Thus, the Sheriff can only be liable as a supervisor.

In general, supervisors can be held liable when "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiffs, and

8

his conduct was causally related to the constitutional violation committed by his subordinate." *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990).  Supervisory liability exists "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Braddy v. Florida Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).  A causal connection can be established where a "supervisor's improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'" *Gonzalez*, 325 F.3d at 1234 (citations omitted).

The plaintiff has failed to allege sufficient facts showing that the Sheriff can be held personally liable for inadequate training on how to protect against inmate suicide.  To be liable for a failure to train a jailer, the Sheriff must have known of the need to correct alleged deprivations and must have made the choice not to take any action.  *See Braddy*, 133 F.3d at 802.  The Amended Complaint alleges only that "[t]he jail is inadequately trained as shown by the facts above . . . ." (Am. Compl. ¶ 80.)

There are allegations that an attempted suicide by Roy Denny occurred in the same cell in which Mr. Owens died.  (*Id*. ¶¶ 75-79)  However, the Amended Complaint fails to allege that the Sheriff had knowledge of Mr. Denny's suicide attempt.  It also fails to allege that Mr. Denny's attempted suicide was a result of a constitutional violation.  Considering that Mr. Denny's attempted suicide occurred only two days before Mr. Owens' death, the determination that the attempted suicide was a result of a constitutional violation could not have been made.  Furthermore, the plaintiff fails to allege that the Sheriff deliberately chose not to take action with regard to jailer training in the two days between Mr. Denny's attempted suicide and Mr. Owens' suicide.  Without such allegation, there is no causal connection between the alleged failure to train and the jailers'

9

alleged deliberate indifference to Mr. Owens. Accordingly, the complaint does not establish a constitutional violation against the Sheriff and such claim against him is due to be dismissed.

### 2. Jail Administrator Jerry Edgar

Assuming, only for the purpose of ruling on the motions to dismiss, that Jerry Edgar is the Jail Administrator and that he can be subjected to supervisory liability, the Amended Complaint does not state a § 1983 failure to train claim for the same reasons it does not state a claim against the Sheriff.

The Amended Complaint, however, does state a claim against Defendant Jerry Edgar for his personal participation in the alleged constitutional violation. Mr. Edgar is alleged to have been one of the booking officers on the night of April 15, 2003, and to have known Mr. Owens was suicidal. (Am. Compl. ¶¶ 55-56). Moreover, the policy is alleged to be that "an inmate that escaped and was recaptured was treated as though he was suicidal." (*Id*. ¶ 70) It is a reasonable inference that a booking officer would have known that Mr. Owens had been recaptured after escape. Although not alleged, the booking process can be inferred to be the first point of an inmate's entry into the Jail. It can also be inferred that booking officers are the first to determine whether inmates have a need for medical or psychiatric care, whether referrals to a mental health agency should be made, whether inmates should be assigned to a holding cell within the view of the booking officer or other officer, whether and how often inmates should be observed, and whether any items should be permitted in the inmate's cell.

Accordingly, a booking officer who has failed to take *any* action to protect a known suicidal inmate violates that inmate's constitutional right. Furthermore, the constitutional right is clearly established; Mr. Edgar is not entitled to qualified immunity.

### 3. Investigators Walter Inabinett, Elliott King, and Wayne Spoon

The basis of the claims against the investigator defendants is that they failed to inform anyone at the jail that Mr. Owens was suicidal. (Am. Compl. ¶ 54.) Whatever the investigators' duty to share their information with the Jail, the failure to do so does not state an Eighth Amendment violation. The defendants, as investigators for the Sheriff's Department, are not Jail officials and have no responsibility over the control and supervision of inmates at the Jail. Therefore, the § 1983 claims against the investigator defendants are due to be dismissed.

### 4. Remaining Defendants – Jailers

The defendants assert that the plaintiff makes no "individualized, specific allegation directed toward" the conduct of any of the defendants. (Defs.' Br. 21.) The defendants complain that each defendant is entitled to "notice as to what specific acts – *particular to that specific defendant* – give rise to what specific claims the plaintiff is pursuing." (*Id*. 22.) The defendants criticize the allegations that the defendants knew that Mr. Owens was suicidal and that they were on duty on April 15 and 16, 2003, as "wholesale and conclusory" and insufficient to overcome the prohibition against shotgun pleadings and to meet the heightened pleading requirement. The Court disagrees and finds that the allegations are sufficient to survive the motions to dismiss.

A shotgun pleading "contains several counts, each one incorporating by reference the allegations of all of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp*., 305 F.3d 1293, 1295 (11th Cir. 2002). In a shotgun pleading, "it is virtually impossible to know which allegation of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. Of Trustees of Cent. Fl. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Here, in ruling on the sufficiency of the claim, the Court has not had any difficulty in determining which allegations in the rather concise nine-page Amended Complaint support the mere two counts alleged. The motion to dismiss on the basis that the Amended Complaint is a shotgun pleading is due to be denied.

For the adjudication of § 1983 claims, the heightened pleading requirement mandates that plaintiffs include some factual detail in the pleadings. *See GJR Inv., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367-69 (11th Cir. 1998). This means that the complaint must include specific, non-conclusory allegations of fact that will enable the Court to determine that those facts, if proved, will overcome the defense of qualified immunity. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). Upon review of the Amended Complaint, the Court is satisfied that it goes beyond "mere conclusory notice pleading" by alleging with some specificity the facts that support Plaintiff's § 1983 claim. The motions to dismiss for failure to satisfy heightened pleading requirements are due to be denied.

The Court has found that the allegations of the Amended Complaint state a constitutional violation. This is not a jail suicide case in which the plaintiff challenges the extent or quantum of the specific *actions* that jail officials take to protect against inmate suicide. Here, the liability of the jail officials is premised on their alleged *inaction*, their failure to take any precautions whatsoever, despite their alleged knowledge that Mr. Owens was suicidal. Their liability is not premised on the violation of administrative jail policies, but rather on the violation of Mr. Owens' clearly established constitutional right to be kept safe in jail. The Eleventh Circuit jail suicide cases may not specify exactly what actions jailers must take to meet a constitutional minimum; however, the cases make perfectly clear that some level of action is required. *See, e.g., Cagle*, 334 F.3d at 989-90, n.15

(finding that a jailer's monitoring of a suicidal inmate, who had been stripped of his belt and shoelaces, via TV cameras and by once-per-hour visits to his stripped down cell, was reasonable and showed a lack of deliberate indifference); *Popham*, 908 F.2d at 1563-64 (finding, on review of grant of summary judgment to defendants, that "[t]he standard procedures followed by Popham's custodians, i.e., removal of shoelaces, belts, socks, and pocket contents" and "[c]losed circuit cell monitoring" demonstrated a lack of deliberate indifference, especially where the officials did not have "the slightest suspicion that Popham might attempt to take his life").  At the time of Mr. Owens' suicide, any reasonable jail officer would have known that the utter failure to provide adequate psychiatric or medical care, a safer cell without the availability of implements of suicide, and supervision at regular intervals to a pretrial detainee known to be suicidal could violate that inmate's constitutional rights.

It is likely that not all of the jailers who were on duty on April 15 and 16, 2003, had direct responsibility for Mr. Owens.  However, it is a reasonable inference that all jailers on duty would be responsible for observing prisoners and handling problems that arose.[5]  The jailers' work hours and duties, their physical location in the jail and proximity to Mr. Owens' cell, and their subjective knowledge of Mr. Owens' suicidal tendencies, facts exclusively within the knowledge of the defendants, will be issues for development in discovery.  No plaintiff could be expected to allege facts of which only the defendants have knowledge and control.  The allegations establish a claim for a violation by each of the jailer defendants of a clearly established right.  Whether all of the

---

[5] The Amended Complaint contains at least one allegation regarding the jailers who had direct responsibility for Mr. Owens. (Am. Compl. ¶¶ 71-72.)  The allegation that Doreen Nelson's explicit refusal to place Mr. Owens on suicide watch and to move him into a safer cell upon the suggestion of another jailer states a constitutional violation.

13

jailers will be liable remains to be seen. In any event, and under the allegations of the Amended Complaint, their ultimate liability is not to be determined on a motion to dismiss. Accordingly, the motions to dismiss with respect to the jailers' qualified immunity are due to be denied.

### E. *State Constitutional Immunity*

The defendants, who include an Alabama Sheriff and his employees in the Sheriff's Department and the Jail, argue that Article I, § 14 of the Alabama Constitution gives them absolute immunity from a state wrongful death claim. The Court agrees. As constitutional officers of the executive branch of state government, Alabama sheriffs are absolutely immune from state law claims. *See McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) (relying on *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996). Sheriff's immunity under the state constitution extends to deputy sheriffs, *Tinney*, 77 F.3d at 383, and to jailers. *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430 (11th Cir. 1997). The state wrongful death claim as alleged in Count II of the Amended Complaint against all defendants is due to be dismissed under state constitutional immunity.

## VI.  CONCLUSION

For the reasons set forth above, it is ORDERED that:

1. The motions to dismiss (Doc. # 26, # 35, and # 45) are GRANTED in part and DENIED in part.

2. The motions are GRANTED with respect to the state constitutional immunity arguments; thus, the state law wrongful death claim alleged against all defendants in Count II of the Amended Complaint is DISMISSED.

3. The motions are GRANTED with respect to the failure to state a claim under the Eighth Amendment; however, the § 1983 claims for a deprivation of due process rights under the Fourteenth Amendment remain.

4. The motions are GRANTED with respect to the qualified immunity of the Sheriff. Thus, all claims against Defendant Anthony Clark are DISMISSED with prejudice.

5. The motions are GRANTED with respect to the qualified immunity of the investigators. Thus, all claims against Defendants Walter Inabinett, Elliott King, and Wayne Spoon are DISMISSED with prejudice.

6. The motions are DENIED with respect to the qualified immunity of the remaining defendants. Thus, the § 1983 claims against Defendants Jerry Edgar, Doreen Nelson, Greg Jackson, Jason Ballard, Herbert Barber, Jeff Barber, Jeffrey Barnes, Dewey Bass, Linda Benson, Bo Davis, Eugene Hoarth, Catherine Martin, David McVay, Kevin Smith, Tom Speigner, Jay Spicer, and Scott Watkins remain.

DONE this the 18th day of July, 2006.

    /s/   W. Keith Watkins
UNITED STATES DISTRICT JUDGE